IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 91-2598

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

SANTOS VILLARREAL and
SERGIO GONZALEZ,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas

---

(June 11, 1992)

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

The district court held that a warrantless search of a fifty-five gallon drum labeled phosphoric acid and in transit to defendants by common carrier violated the Fourth Amendment and suppressed the evidence. The government appeals, arguing that the defendants had no reasonable expectation of privacy in the drum and that the agents had consent to perform the search. We find these arguments without merit and affirm.

I.

One afternoon in February of 1991, employees at Southwest Motor Transport's terminal in Brownsville became suspicious of two fifty-five gallon drums that had been delivered for shipment to

Corpus Christi. The drums were labeled as phosphoric acid, but the employees thought them too light to contain acid and noticed that they did not make sloshing noises when moved. They also lacked the hazardous materials labels normally required for such freight. The foreman, Joe Gracia, suspected that the drums contained contraband. He called Forest Kaupert, a senior vice-president at SMT, who told him to call Customs and have them come over and investigate.

Gracia called Customs, and two agents arrived shortly thereafter. Gracia showed the agents the shipping order for the drums, reflecting their contents as phosphoric acid. However, the weight listed on the order was less than half the expected weight of drums of liquid. The order showed that Roland Martin of Brownsville was the consignor and consignee for the drums. The agents' drug sniffing dog alerted to the drums. Without asking Gracia whether they could open the drums, and without obtaining a warrant, they opened one of the drums and discovered marijuana inside. They then decided to make a controlled delivery, resealed the drum, and sent both drums to the SMT terminal in Corpus Christi.

As it turned out, defendants Santos Villarreal and Sergio Gonzalez were the intended recipients of the drums. Roland Martin was a fictitious name used to ship the drums so that no one could be connected to the marijuana in case anything went wrong. Villarreal did not speak English so he asked a woman named Sylvia Villarreal at South Texas Recycling to call SMT and find out how much the freight charges would be and how arrangements could be

made to pick up the drums. He told her that the drums were not his but belonged to an individual named Roland Martin. She called SMT and obtained the information Villarreal needed.

Villarreal and Gonzales then paid two employees of South Texas Recycling named Torres and Guzman to pick up the drums for them and gave them the receipt for the drums. Torres and Guzman then drove a flatbed truck to the SMT terminal, and Villarreal and Gonzales followed in Villarreal's red pick-up truck. Torres and Guzman obtained the drums from SMT and loaded them onto the flatbed. They returned to South Texas Recycling, again followed by Villarreal and Gonzales in the pick-up. Torres and Guzman then loaded the drums from the flatbed into the pick-up. Gonzales drove the pick-up away, and Villarreal left in Sylvia Villarreal's car. Both men were arrested shortly thereafter, and the drums were seized from the pick-up at the Spinning Wheel Bar where Gonzales had parked it.

Villarreal and Gonzales were charged with possessing and conspiring to possess more than 100 kilograms of marijuana with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. At a pre-trial suppression hearing, defendants argued that the warrantless search of the drum at the SMT terminal in Brownsville violated their Fourth Amendment rights. The government contended that the defendants had no reasonable expectation of privacy in the drums and that the customs agents had in any event obtained consent to search them. The district court rejected the government's arguments and granted the defendants' motion to suppress. The government appeals.

II.

The Fourth Amendment protects individuals from unreasonable searches and seizures that intrude on reasonable expectations of privacy. Warrantless searches are presumptively unreasonable. Horton v. California, 110 S. Ct. 2301, 2306 & n.4 (1990); Katz v. United States, 389 U.S. 347, 357 (1967). To object to a warrantless search, however, a defendant must manifest a subjective expectation of privacy in the object of the search, and the expectation must be one that society is willing to recognize as reasonable or legitimate. California v. Ciraolo, 106 S. Ct. 1809 (1986); United States v. Hamilton, 931 F.2d 1046, 1049 (5th Cir. 1991). Individuals can manifest legitimate expectations of privacy by placing items in closed, opaque containers that conceal their contents from plain view. United States v. Ross, 102 S. Ct. 2157, 2172 (1982); Robbins v. California, 101 S. Ct. 2841, 2846 (1981); United States v. Chadwick, 433 U.S. 1, 11 (1977). The type of container generally does not affect the protection afforded by the Fourth Amendment. The Supreme Court has concluded that "a constitutional distinction between 'worthy' and 'unworthy' containers would be inappropriate." Ross, 102 S. Ct. at 2171. Nor is the fact that a container is not typically used to transport personal effects particularly relevant to the analysis. Once placed within a closed container, "a diary and a dishpan are equally protected by the Fourth Amendment." Robbins, 101 S. Ct. at 2846.

4

Individuals do not surrender their expectations of privacy in closed containers when they send them by mail or common carrier. The Supreme Court has long recognized that "[l]etters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy." United States v. Jacobsen, 104 S. Ct. 1652, 1657 (1984); United States v. Van Leeuwen, 397 U.S. 249, 251 (1970); Ex Parte Jackson, 96 U.S. 727, 733 (1878). Both senders and addressees of packages or other closed containers can reasonably expect that the government will not open them. See United States v. Jacobsen, 683 F.2d 296, 298 n.2 (8th Cir. 1982), rev'd on other grounds, 104 S. Ct. 1652 (1984); United States v. Givens, 733 F.2d 339, 341 (4th Cir. 1984); United States v. Richards, 638 F.2d 765, 769-70 (5th Cir. 1981). Of course, common carriers or other private parties do not violate the Fourth Amendment if they search the packages of others, whether or not they have authority to do so, since the amendment protects only against unreasonable governmental action. See Jacobsen, 104 S. Ct. at 1656; Walter v. United States, 100 S. Ct. 2395, 2404 (1980); United States v. Koenig, 856 F.2d 843, 847 (7th Cir. 1988). In such cases, "[t]he arrival of police on the scene to confirm the presence of contraband and to determine what to do with it does not convert the private search into a government search subject to the Fourth Amendment." Illinois v. Andreas, 103 S. Ct. 3319, 3323 n.2 (1983). But if government agents themselves are to open containers that are sent by mail or private carrier, the requirements of the Fourth Amendment must be satisfied. Therefore, even if government

5

agents have probable cause to believe that there is contraband in a container sent by mail or common carrier, they generally cannot search it unless they first obtain a warrant, or unless some exception to the warrant requirement applies.[1] See Jacobsen, 104 S. Ct. at 1660 n.17; Walter, 100 S. Ct. 2401-02 & n.10; see also Van Leeuwen, 397 U.S. at 250-53 (upholding detention of mail while search warrant could be obtained).

The drum opened by the customs agents in this case was a closed container sent by common carrier in which the sender and addressee had a reasonable expectation of privacy. Despite the fact that we do not usually expect personal effects to be found in a fifty-five gallon drum, such drums are not excluded from Fourth Amendment protection. We are unwilling to draw distinctions based on the relative degrees of privacy in different containers and thereby introduce further complexity to a warrant requirement that is already riddled with exceptions. See California v. Acevedo, 111 S. Ct. 1982, 1992 (1991) (Scalia, J., concurring) (listing exceptions). Unless a container is inside an automobile, in which case it can be searched on probable cause without a warrant, see id. at 1991, closed, opaque containers generally remain subject to the warrant requirement.

Although the consignee of the drums was technically a fictitious person named Roland Martin, this court has made clear

---

[1]    A notable exception exists for mail, packages, or other containers that are entering the United States from abroad. See United States v. Ramsey, 431 U.S. 606 (1977). This exception is not applicable here.

6

that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names. See Richards, 638 F.2d at 770; see also United States v. Pierce, (No. 91-4907) (Slip Op. April 21, 1992) at 4236 n.11 (drawing a distinction between packages addressed to the "alter ego" of a defendant, and those addressed to individuals other than the defendant). It is not clear whether Roland Martin was the alter ego of Villarreal or of Gonzales. Villarreal was in possession of the receipt for the drums that bore the name Roland Martin. Torres apparently indicated, however, that Gonzales had been identified to him as Roland Martin. In any event, Villarreal and Gonzales were both the immediate recipients of the drums, and they conspired together to get them from the SMT terminal in Corpus Christi. Under these circumstances, and given the ambiguity associated with the fictitious name, we find that both Villarreal and Gonzales had a legitimate expectation of privacy in the drums.

The government has not argued, and we do not find, that the warrantless search of the drums was justified as an administrative or regulatory search. The Court has explained that "legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment." Donovan v. Dewey, 101 S. Ct. 2534, 2538 (1981). Such searches are constitutionally valid, however, only if there is a substantial governmental interest that informs the regulatory scheme pursuant to which the inspection is made, if warrantless inspections are necessary to further the regulatory scheme, and if

7

the inspection program provides a constitutionally adequate substitute for a warrant, in terms of the certainty and regularity of its application. New York v. Burger, 107 S. Ct. 2636, 2644 (1987). The government has pointed to no regulatory scheme at all here, much less one that requires warrantless searches to function effectively. We cannot sua sponte transform a search for contraband into a safety inspection.

Nor is this a case where the searching officers had reason to believe that the container contained a "dangerous instrumentality" such that opening the container was imperative for safety reasons. See United States v. Chadwick, 433 U.S. 1, 15 n.9 (1977). The drums were labeled as phosphoric acid, but the record does not indicate that they posed a hazard to anyone's safety. They were properly sealed and had been handled without mishap. The customs agents opened one of the drums to confirm their suspicions that drugs were inside. This was a search for evidence of a crime, not an effort to protect the safety of the officers and the SMT employees at the Brownsville terminal.

The government argues that defendants abandoned any expectation of privacy they might otherwise have had by disassociating themselves from the drums. It observes that the drums were shipped under an assumed name, that Villarreal told Sylvia Villarreal that the drums actually belonged to Roland Martin, and that the defendants did not pick them up themselves but hired others to do so. It relies on our decision in United States v. Boruff, 909 F.2d 111 (5th Cir. 1990), where we found that a

8

defendant cannot assert a reasonable expectation of privacy in a vehicle if he "has rendered all of the normal incidents of ownership, including title and possession, to another and disavows any knowledge of or interest in it." See also Pierce, (No. 91-4097) (Slip Op. April 21, 1992); United States v. McKennon, 814 F.2d 1539 (11th Cir. 1987).

This case is distinguishable from Boruff and the other cases in which courts have found that defendants have no reasonable expectation of privacy by virtue of their disassociation from the object of the search. Villarreal and Gonzales never denied their possessory interest in the drums. They acted through intermediaries and used fictitious names in an effort to escape detection, but they consistently acted as if they were the ones who were to receive the drums. They retained possession of the receipt for the drums, which was the only indication of ownership available. They gave the receipt to Torres and Guzman so that these two could pick up the drums on their behalf, but they took possession of the drums immediately thereafter. Ultimately, Gonzales drove off with the drums in Villarreal's pick-up truck. It can hardly be said that they disassociated themselves from the object of the search.

The government also urges that the drums are in the special category of containers which "by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." Arkansas v. Sanders, 442 U.S. 753, 764 n.13 (1979).; see also Robbins, 101 S. Ct. at 2846

9

(discussing the scope of the Sanders footnote).[2]  The Supreme Court has offered gun cases and burglar kits as examples of containers the distinctive characteristics of which proclaim their contents. We have been careful to construe this exception narrowly, however, so as not to embroil ourselves in the task of categorizing containers on the basis of what they typically contain.  See United States v. Sylvester, 848 F.2d 520, 524-25 (5th Cir. 1988).  We have said that camera bags and hunting boxes fall beyond the scope of the exception, since their contents cannot be inferred simply by looking at them.  Id.; see also United States v. Donnes, 947 F.2d 1430, 1437-38 (10th Cir. 1991) (rejecting contention that camera lens case was excepted from the warrant requirement).

The government argues that the contents of the drums could be inferred because the drums were labeled as phosphoric acid and the shipping order indicated that they contained phosphoric acid.  Thus the customs agents violated no reasonable expectation of privacy when they opened one of the drums and found marijuana within.  In the government's view, the defendants never had an expectation of privacy because the drums literally proclaimed their contents for all to see.

We are not persuaded.  The fact that the exterior of a container purports to reveal some information about its contents does not necessarily mean that its owner has no reasonable expectation that those contents will remain free from inspection by

---

[2]    While both Sanders and Robbins have been overruled, the logic of the Sanders footnote has survived.  See United States v. Donnes, 947 F.2d 1430, 1437 (10th Cir. 1991).

others.  Stated another way, a label on a container is not an invitation to search it.  If the government seeks to learn more than the label reveals by opening the container, it generally must obtain a search warrant.  See Walter v. United States, 100 S.Ct. 2395 (1980) (defendants did not lose all expectation of privacy in pornographic films when their descriptive labels were exposed to plain view).  It goes without saying that a defendant can orally inform a police officer what is in a container, yet stand on his rights and refuse to allow the officer to search that container. The same result should obtain when the information is written on the container rather than orally revealed.[3]

If, as some courts have suggested, the rule the government seeks to invoke is properly characterized as a "plain view" exception to the warrant requirement, see Robbins, 101 S. Ct. at 2846 (referring to the rule of the Sanders footnote as "little more than another variation of the plain view exception"); Donnes, 947 F.2d at 1437 (referring to the "plain view container exception" established by Sanders and Robbins), the government's theory fares no better.  The labels on the drums did not expose the incriminating contents of the drums to plain view.  In fact, they masked the true contents of the drums.  The plain view exception is intended to allow police officers to seize incriminating items that they discover in the course of their legitimate law enforcement

---

[3]    We do not consider here whether an individual could have a reasonable expectation of privacy in a container when he has plainly communicated its incriminating character to the public -- if, for example, the drums in this case were labeled as marijuana.

activities, see Horton v. California, 110 S. Ct. 2301, 2307-08 (1990); Donnes, 947 F.2d at 1438; United States v. Eschweiler, 745 F.2d 435, 439-40 (7th Cir. 1984), not to justify warrantless, exploratory searches of containers that purport to contain innocuous materials. But see Sylvester, 848 F.2d at 524 ("If a violin case is found to contain a machine gun, so much the worse for its owner.").

The government also contends that the customs agents obtained consent to search the drums. Putting aside the question of whether a common carrier has the authority to consent to a search on behalf of the consignor and consignee of a package[4], the district court properly concluded that no consent was given here. "Where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." Florida v. Royer, 103 S. Ct. 1319, 1324 (1983). The government must prove consent by a preponderance of the evidence. United States v. Hurtado, 905 F.2d 74, 76 (5th Cir. 1990). Gracia testified at the suppression hearing that he did not tell the customs agents to open the drums. Nor did he ask them to do so. He simply informed them that these drums were suspicious and left it to them to decide what to do about it. This was company policy. The customs agents did

---

[4] At least one court has found a Fourth Amendment violation despite the fact that a common carrier directed police officers to search a container that was in its custody. United States v. Grant, 920 F.2d 376, 389 (6th Cir. 1990).

12

not testify that they relied on the consent of SMT employees to open the drums. The district court was entitled to conclude that this was nothing more than a report of some suspicious drums and that the government failed to prove consent.

In short, we have found no justification for a warrantless search of the drums. The government clearly had probable cause, but "'no amount of probable cause can justify a warrantless search or seizure absent exigent circumstances." Horton, 110 S. Ct. at 2308 n.7 (quoting Taylor v. United States, 286 U.S. 1 (1932)). The government has not shown any exigent circumstances here. Indeed, it concedes that there was plenty of time to obtain a search warrant and there was no law enforcement value served by performing the search without one. There was no danger that the drums could be lost or destroyed. Government counsel at the suppression hearing below was at a loss to explain why the customs agents failed to obtain a warrant. We cannot correct this oversight after the fact.

AFFIRMED.