02-09-260-CR














 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00260-CR

 

 


 
 
 Angela Goonan
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM County Criminal Court No. 1
OF Tarrant COUNTY

------------

OPINION

------------

I.  Introduction

          By information, the State charged
Appellant Angela Goonan with possession of a dangerous drug.  After a hearing on Goonan’s motion to
suppress evidence found in her car, Goonan entered a plea agreement whereby she
was placed on deferred adjudication community supervision for one year.  In three issues, Goonan complains that the
trial court erred by denying her motion to suppress.  We will affirm.

II.  Background

          In the late evening of August 31,
2008, Corporal Craig Berry of the Keller Police Department stopped Goonan for
speeding.  As Berry approached Goonan’s
car, he saw on the back floorboard a previously opened bottle of wine with its
lid on.  Berry asked Goonan for her
license and insurance papers.  Goonan
provided her license but was unable to show proof of insurance.  As Berry talked to Goonan, he further
observed that the wine bottle was roughly five-eighths full.  According to Berry, he took Goonan’s license
with him to his patrol car to run a computer check, which came back “clear.”  At some point during the encounter, Berry
said that he observed Goonan “making some furtive movements . . . reaching over to her right side.”  After running the computer check, Berry
returned to the passenger side of Goonan’s car and talked with her.  He discussed with Goonan that it was illegal
to have an unsealed wine bottle in the passenger compartment of the vehicle and
asked her “if there were any additional open containers in the vehicle.”  Berry said that Goonan denied there were any
other open containers.  He further said that
she had a worried look on her face and told him that he “could look in the
vehicle and that she had already unlocked it for [him].”  Berry searched Goonan’s vehicle.

          By Berry’s account, while searching
the vehicle, he opened the center console and observed a pill bottle that
contained the name of someone other than Goonan on the prescription label.  He also said that the bottle label seemed odd
because the prescription date was several years old—the fill date was April
2000—and the bottle label indicated that there were no authorized refills
remaining on the prescription.  Berry
opened the pill bottle and observed that there were forty-eight pills within it—the
prescription was written for sixty. 
Berry testified he believed that he was legally in Goonan’s car because
he had her consent and that he was legally allowed to seize the pill bottle
because he had observed it while conducting the search.

          Goonan testified that Berry had
stopped her for speeding and that she did not provide proof of insurance.  She explained that her movements toward the
console were her efforts to look for her insurance papers while Berry was in
his patrol car.  She said that as she was
digging through papers in her console, she saw the pill bottle for the first
time.  According to Goonan, the pill
bottle was at the bottom of the console, under numerous papers, and she “didn’t
think anything of it.”  Goonan said that
Berry accused her of attempting to hide the pill bottle under the other things
in the console because the pill bottle was “buried at the bottom.”  The trial court denied Goonan’s motion to
suppress.  This appeal followed.

III.  Discussion

          In three issues, Goonan complains that
the trial court erred by denying her motion to suppress in violation of her
federal and state constitutional rights and in violation of article 38.23 of
the Texas Code of Criminal Procedure. 
U.S. Const. amend. IV; Tex.
Const. art. I, § 9; Tex. Code Crim. Proc. Ann.
art. 38.23 (Vernon 2005).  Goonan does not contest whether Berry had her
consent to search her vehicle, nor does she complain that Berry seized the pill
bottle.  Goonan’s complaint is that Berry
was not justified in opening the pill bottle because it contained “innocuous
materials.”  We disagree.

          1.       Standard
of Review

          We review a trial court’s ruling on a
motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In
reviewing the trial court’s decision, we do not engage in our own factual
review.  Romero v.
State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State,
118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.  Wiede v.
State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost total deference to
the trial court’s rulings on (1) questions of historical fact, even if the
trial court’s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application-of-law-to-fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d
at 673; Montanez v. State, 195 S.W.3d 101, 108–09 (Tex. Crim. App.
2006); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court’s rulings on those questions de novo.  Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson,
68 S.W.3d at 652–53.

          Stated another way, when reviewing the
trial court’s ruling on a motion to suppress, we must view the evidence in the
light most favorable to the trial court’s ruling.  Wiede, 214 S.W.3d at
24; State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court’s ruling, supports those fact findings.  Kelly, 204 S.W.3d at
818–19.  We then review the trial
court’s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.  Id. at 818.

          When the record is silent on the
reasons for the trial court’s ruling, or when there are no explicit fact
findings and neither party timely requested findings and conclusions from the
trial court, we imply the necessary fact findings that would support the trial
court’s ruling if the evidence, viewed in the light most favorable to the trial
court’s ruling, supports those findings. 
State v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim.
App. 2008); see Wiede, 214 S.W.3d at 25. 
We then review the trial court’s legal ruling de novo unless the
implied fact findings supported by the record are also dispositive of the legal
ruling.  Kelly, 204
S.W.3d at 819.

          We must uphold the trial court’s
ruling if it is supported by the record and correct under any theory of law
applicable to the case even if the trial court gave the wrong reason for its
ruling.  State v. Stevens, 235
S.W.3d 736, 740 (Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d
401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).

          2.       Plain-View
Doctrine

          The plain-view doctrine involves no
invasion of privacy.  See Texas v.
Brown, 460 U.S. 730, 738, 103 S. Ct. 1535, 1541 (1983); Walter v.
State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).  Thus, if an item is in plain view, neither
its observation nor its seizure involves any invasion of privacy.  Walter, 28 S.W.3d at
541.  The rationale of the plain-view
doctrine is that if contraband is left in open view and is observed by a police
officer from a lawful vantage point, there has been no invasion of a legitimate
expectation of privacy and thus no “search” within the meaning of the Fourth
Amendment.  See Illinois v. Andreas,
463 U.S. 765, 771, 103 S. Ct. 3319, 3324 (1983).  An object is seized in plain view if three
requirements are met.  Keehn
v. State, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009).  First, law enforcement officials must
lawfully be where the object can be “plainly viewed.”  Id.
(citing Horton v. California, 496 U.S. 128, 136, 110 S. Ct. 2301, 2308
(1990)).  Second, the
“incriminating character” of the object in plain view must be “immediately
apparent” to the officials.  Keehn,
279 S.W.3d at 334. 
Third, the officials must have the right to access the object.  Id.  The second prong, the immediacy requirement,
requires only a showing of probable cause that the item discovered is
incriminating evidence; actual knowledge of the incriminating evidence is not
required.  Joseph v. State, 807
S.W.2d 303, 308 (Tex. Crim. App. 1991) (citing Horton, 496 U.S. at 136,
110 S. Ct. at 2308).  “Probable
cause merely requires that the facts available to the officer would warrant a
man of reasonable caution in the belief . . .
that certain items may be contraband.”  Miller v. State, 686 S.W.2d 725, 728 (Tex. App.—San Antonio
1985, no pet.).  An officer may
rely on training and experience to draw inferences and make deductions as to
the nature of the item seen.  Nichols v. State, 886 S.W.2d 324, 325–26 (Tex. App.—Houston
[1st Dist.] 1994, pet. ref’d).

          In this case, Berry testified that he
lawfully searched inside Goonan’s console because she had consented to his
search of her vehicle.  Goonan does not
contest this fact.  Thus the first and
third prongs of the plain-view doctrine are easily satisfied.  Berry also said that the incriminating nature
of the contents of the pill bottle was obvious to him because the label was
made out to someone other than Goonan, the prescription was rather old and did
not allow for refills, and he found the pill bottle in the car’s console where
Goonan had made furtive movements earlier. 
We conclude that the facts available to Berry would warrant a man of
reasonable caution to believe that the pill bottle contained contraband and
that his search of it was justified.

          Goonan argues that the “general rule”
is that “[i]ndividuals can manifest legitimate expectations of privacy by
placing items in closed, opaque containers that conceal their contents from
plain view.”  United
States v. Villarreal, 963 F.2d 770, 773 (5th Cir. 1992).  We agree that this is a well-founded general
rule, but the Villarreal court acknowledged that its reasoning did not
apply in the context of an automobile when, as here, the officer possesses
probable cause that such a container contains contraband.  See id. at 774. 
Furthermore, the Villarreal court held that the container
at issue in that case was not incriminating in nature; therefore, the
plain-view doctrine did not apply.  Id. at 776. 
But we hold that the container’s incriminating nature in this case was
readily apparent to Berry.  Therefore,
the trial court did not err by denying Goonan’s motion to suppress.  We overrule Goonan’s three issues.

IV.  Conclusion

          Having overruled all three of Goonan’s
issues, we affirm the trial court’s judgment.

 

 

BILL
MEIER
JUSTICE

 

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

 

DAUPHINOT,
J. filed a concurring opinion.

 

PUBLISH

 

DELIVERED:  January 20, 2011













 



 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT
WORTH

 

NO. 02-09-00260-CR

 

 


 
 
 ANGELA GOONAN
 
 
 APPELLANT
 
 


 

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM
COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

 

------------

 

CONCURRING
OPINION

 

------------

          I write separately because I cannot
tell from the well-written majority opinion what offense Appellant was found to
have committed and what drug, dangerous drug, controlled substance, alcohol, or
stolen property Appellant was found to have possessed.  Or was she found to have violated the law by
possessing a pill bottle with someone else’s name on its label?  If so, I cannot find that offense in our
penal code.  The record informs us that
she was placed on deferred adjudication community supervision for possession of
a “dangerous drug.”[1]  I join the majority because Appellant
consented to the search and because she does not challenge the
constitutionality of the statutes defining “dangerous drug” and making its
possession illegal, statutes that make so little sense that it is difficult to
understand how they provide any guidance to law enforcement, the bench, the
bar, the pharmacist, or any person of normal perception.

From reading the record and the briefs, I deduce that the
prohibited substance, the “dangerous drug,” was naproxen.  Naproxen?  Really?  The original prescription was filled in April
2000 and was for sixty pills.  When the
officer stopped Appellant in August 2008, forty-eight pills remained.  At that rate of consumption (assuming these
pills were being consumed and assuming they were part of the original sixty),
it would take another nineteen-plus years for the original prescription to be
exhausted.

It should be noted that this “dangerous drug” can be
purchased over the counter at local drugstores. 
Naproxen is sold over the counter as Aleve and Midol Extended
Relief.  Wikipedia informs us that “[t]he U.S. Food and Drug Administration (FDA) approved [the
use of naproxen sodium] as an over-the-counter (OTC) drug in 1994, where OTC
preparations are mainly marketed by Bayer HealthCare under the trade name Aleve
and generic store brand formulations.”[2]

          The record and the briefs inform us
that this formulation that can readily be purchased over the counter is a
dangerous drug.  Why?  Nothing in the record suggests that the
contents of the bottle were tested and proved to be something other than
naproxen.  Nothing in the record suggests
that the naproxen had been combined with another drug.  It appears to be plain old naproxen.  So why is it a crime for Appellant to possess
it?

          Section 483.001 of the health &
safety code defines a dangerous drug:

“Dangerous drug” means a device or a drug that is unsafe
for self-medication and that is not included in Schedules I through V or
Penalty Groups 1 through 4 of Chapter 481 (Texas Controlled Substances
Act).  The term includes a device or a drug
that bears or is required to bear the legend:

          (A)   “Caution:   federal law prohibits dispensing without
prescription” or “Rx only” or another legend that complies with federal law; or

          (B)   “Caution:   federal law restricts this drug to use by or
on the order of a licensed veterinarian.”[3]

          This is the law, but what does it
mean?  Federal law requires a legend on
cigarettes.[4]  Does this mean that because cigarettes
require “another legend that complies with federal law,” a cigarette is a
dangerous drug?  A dangerous drug must be
a substance that is “unsafe for self-medication” but that is not otherwise
against the law to possess.[5]  Naproxen is sold over the counter.  Is it unsafe for self-medication?  Who must testify that it is unsafe for
self-medication?  Must a pharmacist or
some other expert testify to this fact? 
Apparently the naproxen found in Appellant’s car was a dangerous drug
because it was in a prescription bottle. 
Would it still be a dangerous drug if it had been removed from the
bottle?

I note that there is no exception in the possession
statute (or, for that matter, the delivery statute[6]) for
family members.[7]  That is, there is no exception that would
allow a parent to pick up a prescription for a small child, or even an adult
child, from the pharmacy.  There is no
exception that would allow an adult child to pick up a prescription for an
elderly parent.  Nor can wives or
husbands pick up prescriptions for their spouses.  And apparently parents must leave the
dangerous drug in possession of the child because the parent violates the law if
the parent exercises care, custody, or control over the dangerous naproxen by
putting it on a shelf only the parent can reach.  And what about Fido and
Fluffy?  If the statute is to be
complied with, they had better figure out how to pick up their own prescription
from the vet and how to dose themselves because their owner cannot possess pet
medication.

          If we were not required to give words
contained in statutes their plain meaning,[8] we could
read some of these exceptions into the statute. 
But we are not allowed to create exceptions the legislature has not
created.[9]

          I write
separately because the majority does not make plain the offense and
circumstances of the offense that Appellant was accused of committing.  The statutes defining “dangerous drug” and
criminalizing the possession thereof do not make sense and raise too many
questions about what kind of testimony, expert or otherwise, is required to
prove a violation of the law.  I also
write to urge the legislature to reconsider these statutes that are so poorly
written, to rethink the rationale behind making an OTC drug a dangerous drug
with no more guidance than the statutes provide, and to place acquisition and
storage of prescriptions in a real-world context.

 

 

                                                                             LEE
ANN DAUPHINOT

                                                                             JUSTICE

 

PUBLISH

 

DELIVERED: January 20, 2011











[1]Tex. Health & Safety Code Ann. §§ 483.001(2), .041 (Vernon 2010).





[2]Wikipedia, The Free Encyclopedia, Naproxen, http://en.wikipedia.org/wiki/ Naproxen (last visited Jan.
14, 2011).





            [3]Tex.
Health & Safety Code Ann. § 483.001(2).





[4]See 15 U.S.C. § 13.33 (2010).





[5]Tex. Health & Safety Code Ann. § 483.001(2).





[6]See id. § 483.042.





[7]See id. § 483.041.





[8]See Martinez v. State,
323 S.W.3d 493, 503 & n.58 (Tex. Crim. App. 2010).





[9]See Getts v. State, 155 S.W.3d 153, 158
(Tex. Crim. App. 2005) (quoting Lamie v.
U.S. Trustee, 540 U.S. 526, 542, 124 S. Ct. 1023, 1034 (2004)).