BENTON, J.,
dissenting.
The order granting appellee Williams’s motion to suppress should be affirmed. An appellate court “‘must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling,’ ” Patrick v. State, 104 So.3d 1046, 1059 (Fla.2012) (quoting Rolling v. State, 695 So.2d 278, 291 (Fla.1997)), not jettison the trial court’s explicit findings in favor of its own inferences and speculation. See State v. Setzler, 667 So.2d 343, 346 (Fla. 1st DCA 1995) (“A reviewing court is bound by the trial court’s findings of fact— even if only implicit — made after a suppression hearing, unless they are clearly erroneous.”).
The trial court order’s substitution of “Keith” for “Key” as the fictitious addressee’s fust name is, as the majority opinion points out, a mistake, but this isolated, apparently typographical or transcription error is inconsequential. It has no logical bearing on the outcome of the case. Un *1213 der binding ■ precedent, the trial court’s findings of fact control, absent clear error. All the material findings of fact are rock solid.
I.
People in the United States have a constitutionally protected expectation of privacy in first class mail and in sealed packages mailed or shipped by common carrier. See, e.g., United States v. Jacobsen, 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (“Letters and other sealed packages are in the general class of effects[3] in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable. Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package.” (footnotes omitted)); United States v. Van Leeuwen, 397 U.S. 249, 251, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970) (noting “[i]t has long been held that first-class mail such as letters and sealed packages subject to letter postage — as distinguished from newspapers, magazines, pamphlets, and other printed matter — is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment”); United States v. Villarreal, 963 F.2d 770, 773-74 (5th Cir.1992) (“Individuals can manifest legitimate expectations of privacy by placing items in closed, opaque containers that conceal their contents from plain view.... Individuals do not surrender their expectations of privacy in closed containers when they' send them by mail or common carrier_Both senders and addressees of packages or other closed containers can reasonably expect that the government will not open them.”).
II.
Perhaps because the drug dog would not alert, the authorities made no effort to show probable cause in order to obtain a warrant in the present case. Cf. United States v. Elgin, 57 Fed.Appx. 659, 661 (6th Cir.2003) (alert by drug-detection dog provided probable cause for search warrant); United States v. Johnson, 25 F.Supp.3d 1034, 1038 (W.D.Mich.2014) (“The dog alerted on the envelope on August 16, at which time probable cause was established to detain the envelope for purposes of seeking a warrant.”). The defense timely moved to suppress on the usual constitu *1214 tional grounds because “the property was illegally seized without a warrant,” Fla. R.Crim. P. 3.190(g)(1)(A). “Warrantless searches are .presumptively unreasonable, though the Court has recognized a few limited exceptions to this general rule. See, e.g., United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (automobiles); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (consent); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (exigent circumstances).” United States v. Karo, 468 U.S. 705, 717, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). To defeat the presumption of illegality attendant on a warrantless search — which is the state’s burden, a burden it did not meet here — the state relies only on putative consent by Cynthia Richardson, who told the police the parcel belonged to somebody else and who never.claimed authority to consent-to the search of what the trial court found was Mr. Williams’s parcel.
Consent is a question of fact. See Illinois v. Rodriguez, 497 U.S. 177, 188-89, 110 S.Ct. 2793; 111 L.Ed.2d 148 (1990) (“As with other factual determinations bearing upon search ánd seizure, determination of consent to enter must ‘be judged against an objective standard: would the facts available to the officer at the moment ... “warrant a man of' reasonable caution in the belief’ ’ that the' consenting party had authority over the premises?” (quoting Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968))); Barnes v. State, 75 So.3d 1287, 1288 (Fla. 1st DCA 2011) (“[T]he evidence supports the trial court’s determination that Appellant’s wife had the authority to consent to a search of the couple’s home.”); Marganet v. State, 927 So.2d 52, 61 (Fla. 5th DCA 2006) (“[T]he evidence is also insufficient to establish apparent authority on the part of Pinero to consent to a search. Rather, the facts known to the agents were such that they could have no objectively reasonable belief that she had authority over these items.”).
The state’s burden of proof on consent as an exception to the warrant requirement includes foundationally the burden to prove authority to consent. “[T]he state has the duty to prove through specific facts that the third party has the authority over the particular object to be searched.” Kelly v. State, 77 So.3d 818, 825 (Fla. 4th DCA 2012). “To determine whether an officer’s reliance [on consent based on apparent authority] was reasonable, courts presume that the officer was familiar with the applicable law. -Then, the proper inquiry is whether a reasonable person familiar with the applicable law would have believed the third party had common authority over the premises or item searched[4] *1215 If the basis for the asserted authority is unclear, the officer must conduct further inquiry before relying on the third party’s representations.” State v. Young, 974 So.2d 601, 610 (Fla. 1st DCA 2008) (citations omitted). ■ In the present case, the trial court concluded, “[n]o evidence was presented to show that [Ms. Richardson] had either expressed authority or apparent authority to either open the package or give law enforcement the authority to open the package.” The trial, court also observed, “Tellingly, Officer Tabb .never asked Ms. Richardson if she had the authority to open the package.” Instead, “[t]he officers accepted her consent without question,” even though she had told them the package belonged to somebody else.
III.
Sent from California, the parcel was addressed to “Key Phillips,” a fictitious person, at an apartment occupied by Ms. Richardson. While she signed for the parcel before law enforcement (who had been told by apartment complex managers that nobody named Key Phillips lived at the complex) arrived and questioned her about the package, Ms. Richardson told Investigator Morris of the Tallahassee Police Department that the parcel belonged to “Jeff’ and that she did not know what it contained. In short, she told him the parcel was not hers before he opened the package and found marijuana.
The trial court rejected .the state’s proffered- justification for this warrantless search, finding law enforcement did not prove reasonable reliance on any apparent authority on Ms. Richardson’s part to give consent to search the package. The trial court rejected the contention that she had joint access or control over the contents of the parcel she received on Mr. Williams’s behalf.
“Common authority” is derived from “mutual use of the property by persons generally having joint access or control for most purposes.” The legal justification behind the doctrine of common authority is that when two people have mutual use of property, each assumes the risk that the other will permit the area to be searched. ' Even when a third party has the right to enter "the property and inspect it for his or her own purposes, that person does not have constitutional authority to invite law enforcement officers to search the property unless he or she has common authority over the property.
Young, 974 So.2d at 609 (citations omitted). Defense counsel asked, “Anything other than her signing for the package and anything else that gave you an indication that she had authority to consent to the opening of the package?” Investigator Morris answered, “Nothing other than taking possession of it.” On this record,[5] an appeals court is not free to reject the trial court’s findings and substitute its own.
*1216 The trial court’s finding that the state failed to prove common authority ought to be upheld. “An appellate court reviewing a ruling on a motion to suppress presumes that a trial court’s findings of fact are correct and reverses those findings only if they are not supported — ” Cuervo v. State, 967 So.2d 155, 160 (Fla.2007). See also Fitzpatrick v. State, 900 So.2d 495, 513 (Fla.2005) (“A trial judge’s ruling on.a motion to suppress is clothed with a presumption of correctness with regard to determinations of historical fact.”); Blalock v. State, 98 So.3d 118, 120 (Fla. 1st DCA 2012) (same).
While apparent authority may exist even when real authority does not, the trial court also rejected the state’s claim of apparent authority. The trial judge concluded that “[w]ith the knowledge available to them the officers knew or should have known that Ms. Richardson did not have authority to consent and that a warrant was needed to open the package.” “The right of a third party to consent to a search on behalf of a defendant was extended to those with ‘apparent authority' in Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Rodriguez established that even if a third party does not possess actual common authority over the area that was searched, the Fourth Amendment is not violated if the police relied in good faith on a third party’s ‘apparent authority' to consent to the search.” Marganet, 927 So.2d at 55. But the trial court did npt find reasonable or good faith reliance,[6] and it is not at all clear why the majority opinion seems to.
The trial court’s findings of fact as to apparent authority should be the end of the question. See Kelly, 77 So.3d at 826 (The police officers “did not ... elicit any facts to show that Morales had authority to permit their search of the red bag. In fact, during both searches of the home, Morales repeatedly identified property belonging to Kelly. The officers did not attempt to establish that Morales, had joint control over those items, and indeed her statements to them showed that she did not have anything to do with the red bag.”); Marganet, 927 So.2d at 58 (“When police are told by a third party that the property belongs to another, the officers are obligated to make inquiries sufficient to establish that the person consenting to the search has both common control over the property and mutual use of-it.”). See also United States v. Jaras, 86 F.3d 383, 389 (5th Cir.1996) (concluding that when person giving consent admonishes an officer that a bag belongs to third party who is the subject of a search, this may be understood to deny joint access and control over the property); United States v. Infante-Ruiz, 13 F.3d 498, 504-05 (1st Cir.1994) (holding that when third party consent to search vehicle and trunk is qualified by a warning that the briefcase belonged to another, officers could not assume without further inquiry that the consent extended to the briefcase); United States v. Salinas-Cano, 959 F.2d 861, 862-63 (10th Cir.1992).
The information known to law enforcement at the time Richardson “consented” supports the Conclusion that she did not have the authority, actual or apparent, to consent to a search of the package. See Salinas-Cano, 959 F.2d at 864 (“The government has the burden of proving the effectiveness of a third party’s consent. ‘The burden cannot be met if agents, faced *1217 with an ambiguous situation, nevertheless proceed without making further inquiry. If the ágents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to “mutual use” by the person giving consent, “then warrantless entry is unlawful without further inquiry.’” United States v. Whitfield, 939 F.2d 1071, 1075 (D.C.Cir.1991) (quoting Rodriguez, 110 S.Ct. at 2801))” (emphasis & citation omitted).
The trial court’s finding that officers “obviously knew” that Ms. Richardson was not the addressee is plainly correct. The record indicates the package was addressed not to her, but to the fictitious “Key Phillips.” Apartment complex managers had already told them nobody named Key Phillips lived in the complex. The trial court found police knew she was not “Key Phillips” because she informed them, before they asked her for consent to open the package that the package belonged to “Jeff.” See Evans v. State, 989 So.2d 1219, 1222 (Fla. 5th DCA 2008) (“When a third party informs the officer that a closed container belongs to another person, it is not objectively reasonable for the officer, without making further inquiry, to search the container.”). The majority opinion arbitrarily rejects well supported findings of fact.
IV.
Even though appellee Williams was charged'with possession of the contents of the parcel (marijuana) with intent to sell it, the state argues that he lacked standing to challenge an illegal search and seizure,[7] “The reasonableness of an expectation of privacy in a particular place or items depends on context.” Young, 974 So.2d at 608. The defense can meet its initial factual burden without the defendant’s testimony, as the trial court pointed out, “if you can show it any other way, other than him admitting that that’s his. package.” Whether “the owner of the good ha[s] a legitimate expectation of privacy in the area searched” is “a factual finding.” United States v. Salvucci, 448 U.S. 83, 92, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). See United States v. Matlock, 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (“[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.”):
On the standing issue too — and based on even more evidence — the trial court decided the factual questions against the state. Again, the package was addressed to a fictitious, not to a real, person, which officers testified they knew before delivering the package. Investigator Morris testified without contradiction that Ms. Richardson told him the package belonged to the appellant. This testimony came in without hearsay or other objection. Information on her cellphone corroborated his owner *1218 ship, There is- no .evidence that Mr. Williams ever disavowed ownership of the package or. its contents. On the contrary, he arrived promptly at Ms. Richardson’s apartment to pick up the parcel after receiving a text message on his phone informing him it was there. His flight once he saw the police underscored his connection to the parcel. (There is no question of abandonment here because the illegal search and seizure had already occurred.) The trial judge’s finding that the appellant was=the intended recipient of the package mailed to a fictitious addressee has ample support in the record.
In ignoring the trial court’s findings and concluding the appellant had no reasonable expectation of freedom from governmental intrusion nor any property interest in the package, the -majority opinion relies on decisions where letters or packages were addressed to actual persons who did not themselves challenge the search or seizure. The decision in United States v. Pierce, 959 F.2d 1297 (5th Cir.1992), a collateral attack on ineffective assistance of counsel grounds, is clearly distinguishable. There a package containing cocaine was addressed to and received by an actual third person, not the defendant. Id. at 1299-1300; see id. at 1303 n. 11 (“Here, the package was not addressed to a fictitious entity,; or to an alter ego of Pierce, but to Crumpton.”). Before and during trial, moreover,, Pierce intermittently denied ownership of the package and contended that the package and its contents belonged to the named addressee. Id. at 1303. The ineffective assistance claims, based on trial counsel’s failure to make certain arguments in support of a motion to suppress, were understandably denied. Id. Similarly, in United States v. Smith, 39 F.3d 1143 (11th Cir.1994), the court affirmed the denial of a suppression motion and concluded that the district court did hot err by finding the defendant did not have a legitimate expectation of privacy in a letter sent to Kirkconnell (an actual person) -given his “equivocal testimony regarding his ownership interest in the letter, and .the fact that he was neither the sender nor the addressee of the letter.” Id. at 1145.
Merely entrusting a parcel or other container to another does not forfeit the owner’s right to freedom-from arbitrary'governmental search of the contents. See generally United States v. Canada, 527 F.2d 1374, 1378 (9th Cir.1975) (“[S]he did not relinquish her protectible interest, nor her standing to object, by sharing access and control of the suitcase with her companion.”); State v. Taylor, 114 Nev. 1071; 968 P.2d 315, 320-21 (1998) (holding airline traveler had standing as to his suitcase even though his niece, traveling with him, had checked it in her own name and retained the baggage claim ticket).
Where the addressee is not a real person, it becomes an evidentiary question whether the right to possession (or other factual basis for reasonably expecting freedom from governmental intrusion) asserted by a defendant moving to suppress is established. See, e.g., Villarreal, 963 F.2d at 774 (finding that “[although the consignee of the drums was technically a fictitious person named Roland Martin,” both Villarreal and co-defendant Gonzales had a legitimate expectation of privacy in the drums (even though it was not clear whether Roland Martin was the alter ego of Villarreal or Gonzales) because both were the immediate recipients of the drums and they conspired together to get them from the terminal, and stating that “this court has made clear that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names”); United States v. Richards, 638 F.2d 765, 770 (5th Cir.1981) (concluding Richards had a legitimate expectation that the contents of the package were private and had standing to assert Fourth Amendment protection, “[c]onsid- *1219 ering all the circumstances”).[8] In the present case,- the trial court determined appellee Williams, as the owner and intended' recipient of the parcel, had a protected privacy interest in the package and was entitled to assert, the Fourth Amendment violation.
As a factual matter, the trial court ruled, Mr. Williams’s expectation - of privacy was both subjectively and objectively reasonable. The trial court found he had made arrangements designed to prevent the package, although addressed to the fictitious “Key Phillips,” from being opened by anyone else. Ms. Richardson understood and agreed that, when she received a package addressed to Key Phillips,-it was for the appellant and him alone, or so the trial court was permitted to find on this record.[9]
Stepping back from the context of drug investigations, "there are many situations *1220 in which a person may have perfectly legitimate reasons for arranging to have correspondence or packages shipped to him through another person he trusts_ Consider, for example, a celebrity’s interest in avoiding harassment or intrusion, or a controversial public official’s interest in the security of packages or envelopes, or a business executive involved in sensitive merger negotiations who wishes to ensure the secrecy of papers that could give a recipient the ability to take unfair advantage in securities markets. If the privacy of such a package were breached, surely the courts would allow the true owner, whom the courts would treat as a real party in interest, to assert those privacy interests in a civil claim against someone who caused injury by violating the privacy of the package.
United States v. Evans, 2001 WL 243287, *5 (S.D.Ind.2001). See United States v. Allen, 741 F.Supp. 15, 17-18 (D.Me.1990) (finding that, under all the circumstances in that case, the defendant had an objectively reasonable and subjective expectation of privacy in the envelope and its contents and explaining that the expectation was reasonable because federal law protected the envelope in the mail from unauthorized access and the defendant had arranged with the addressee to receive the envelope and deliver it to the defendant intact upon receipt). “When an individual asks someone else to receive mail for him, he does not by that fact alone surrender a reasonable expectation of privacy.” Id. at 18 (citing 3 LaFave, Searches & Seizures § 11.3(f)); see also People v. Pereira, 150 Cal.App.4th 1106, 58 Cal.Rptr.3d 847, 853 (2007) (finding “substantial evidence of objective factors that support the trial court’s finding that defendant did not abandon his package,” even though it was addressed to a fictitious name at a false address).
V.
The majority opinion relies on appellate decisions in cases where parcels were addressed to real persons who did not invoke their Fourth Amendment rights {Pierce and Arrendando), which is clearly not the case here, and in which the appellate courts followed the rules and upheld the trial court’s findings (Colon-Solis and Smith). Just as we “must accept the trial court’s factual findings if there is evidence to support them” when the factual findings result in denial of a motion to suppress, *1221 Nelson v. State, 850 So.2d 514, 522 (Fla.2008); see also Burns v. State, 584 So.2d 1073, 1076 (Fla. 4th DCA 1991), we must accept factual findings that support the grant of a motion to suppress when the motion is granted. See, e.g., Jardines v. State, 73 So.3d 34, 55 (Fla.2011) (holding district court erred in reversing trial court order’s which had granted motion to suppress, where' “the trial court’s factual findings [were] supported by competent, substantial evidence”); Markus v. State, 160 So.3d 488, 490 n. 1 (Fla. 1st DCA 2015) (deferring to the trial court’s finding that the “townhome, including the garage area, was Appellant’s residence” because the record “containfed] competent, substantial evidence to support this finding of fact”). The majority opinion turns its back on this neutral and time-honored rule of decision.
VI.
“It may be that it is the obnoxious thing in its mildest and least repulsive form;, but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure.” Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886). “If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means — to declare that the government may commit crimes in order to secure the conviction of a private criminal — would • bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face.” Olmstead v. United States, 277 U.S. 438, 485, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandéis, J., dissenting). It is “less evil that some criminals should escape than that the government should play an ignoble part.... [N]o distinction can be taken between the government as prosecutor and the government as judge. If the existing code does not permit district attorneys to have a hand in such dirty business it does not permit the judge to allow such iniquities to succeed.” Id. at 470, 48 S.Ct. 564 (Holmes, J., dissenting).
“The Supreme Court may be the architectural supervisor that ensures that the grand scheme of the separation of powers and rule of law is properly sketched, but it is the lower, courts that pound in the nails and properly square the corners to make sure the system functions during the workday even when the supervisor is not around,” Scott E. Sundby, Everyman’s Exclusionary Rule: The Exclusionary Rule and the Rule of Law (or Why Conservatives Should Embrace the Exclusionary Rule), 10 Ohio St. J. of Crim. L. 393, 411 (2013). In the present case, the court has regrettably missed the nail and pounded its thumb.

. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.” U.S. Const. amend. IV. (emphasis supplied). See also Art. I, § 12, Fla. Const. ("The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures ... shall not be violated.... This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.”) (Emphasis supplied.) “[I]f government agents themselves are to open containers that are sent by mail or private carrier, the requirements of the Fourth Amendment must be satisfied. Therefore, even if government agents have probable cause to believe that there is contraband in a container sent by mail or common carrier, they generally cannot search it unless théy first obtain a warrant, or unless some exception to the warrant requirement applies.” United States v. Villarreal, 963 F.2d 770, 774 (5th Cir.1992). See Ex parte Jackson, 96 U.S. 727, 735, 24 L.Ed. 877 (1877) (“[R]egulations excluding matter from the mail cannot be enforced in a way which would require or permit an examination into letters, or sealed packages subject to letter postage, without warrant, issued upon oath or affirmation, in the search for prohibited matter.”); United States v. Richards, 638 F.2d 765, 770 (5th Cir.1981) (“[S]ealed mail historically has been considered to have a “high degree of privacy, and government intrusion into mailed parcels is limited by the fourth amendment.”).

. Taken collectively, these cases suggest that a number of factors bear on the rights of a third ■ party to consent to a search of a container. They include such factors as whether the •property, clearly belongs to one person; whether it is generally used by. one person, whether it is freely accessible to, others, whether the container is closed or open, whether it is locked or unlocked, .and whether orders have been given not to open.the container. The relationship of the parties and the nature of the property may also have a bearing on the right to consent to a search. As was pointed .out in United States v. Basinski, 226 F.3d 829, 834 (7th Cir.2000), "it is less reasonable for a police officer to believe that a third party has full access to a defendant’s purse or a briefcase than, say, an open crate.” Moreover, a wife may have a right of access to her husband’s shaving kit that a roommate or girlfriend does not. The burden is on the State to show that police were given free and voluntary consent to enter the premises by someone with actual or apparent authority to do so. Williams v. State, 788 So.2d 334, 336 (Fla. 5th DCA 2001). Thus, when making entry or conducting a isearch, an officer, must elicit sufficient facts from which he or she can determine that the person consenting to the search has common authority over *1215 the premises or property to be searched. Saavedra v. State, 622 So.2d 952, 959 (Fla.1993).
Kelly v. State, 77 So.3d 818, 826 (Fla. 4th DCA 2012) (quoting Marganet v. State, 927 So.2d 52, 60-61 (Fla. 5th DCA 2006)) (emphasis omitted),

. When asked if Richardson said she had permission from Jeff to open the package, Investigator Morris answered, "She said, in my words, she said she was receiving the package for Jeff.... Arid by signing the name Key Phillips. She wouldn’t have known to write Key Phillips without having prior knowledge that the package was coming. And she accepted the package and it was in her possession and I asked her could I open the package."

. How could it? Officers knew that Ms. Richardson was not "Key Phillips,” 'the fictitious addressee.named on the package. After she signed for the package, Investigator Morris “talked to her about the package, asked her who she was getting it for, what was in it. She said she was receiving it for a guy named Jeff, She didn’t know what was in it.” Without anything more, he asked for her permission to open the package.

. Below the prosecutor questioned his standing "absent a showing of privacy interest in the package, if he wishes to go under oath and admit to ownership of the package, then we have a motion to suppress. But absent a showing of standing of the reasonable expectation of privacy, the burden does not shift to the State." In Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court did "recognized two analytically distinct but ‘invariably intertwined' issues of substantive Fourth Amendment jurisprudence. The first is ‘whether (a] disputed search or seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect,’ the second is whether ‘the challenged search or seizure violated [that] Fourth Amendment righ[t].’" Rawlings v. Kentucky, 448 U.S. 98, 111-12, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (Blackmun, J., concurring) (citations omitted). As to the former, the test is whether the movant had a “reasonable expectation of freedom from governmental intrusion." Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968).

. In Richards, 638 F.2d at 769, ''[t]he question of Richards’ standing to contest, the search was not raised in the court below.”

. See United States v. Pitts, 322 F.3d 449, 457-59 (7th Cir.2003) (footnote omitted), where the court said, in response to a separate opinion:
The concurrence acknowledges that there are a number of legitimate reasons "that a person might wish to send or receive a package using a nom de plume. Some authors and journalists, such as the incomparable Ann Landers, whose real name was Eppie Lederer, employ a pseudonym in their professional life. " This' is a common and unremarkable practice. In other situations, a celebrity may wish to avoid harassment or intrusion; a government official may have security concerns in using her real name or home address to receive mail; a business executive in merger talks might worry about potential investors misusing the information gained through the mail to manipulate the securities markets. See United States v. Evans, 2001 WL 243287, *5 (S.D.Ind. Jan. 31, 2001), aff'd, 282 F.3d 451 (7th Cir.2002), cert. denied, 537 U.S. 918, 123 S.Ct. 304, 154 L.Ed.2d 204 (2002). Indeed, a sender of mail might wish to remain completely anonymous for any number of reasons. The Supreme Court has held that anonymity of. an author is not a sufficient reason to exclude literary works or political advocacy from the protections of the First Amendment. McIntyre v. Ohio Elections Comm’n, 514 U.S. 334, 341-43, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). As the Court noted there, an author may decide to remain anonymous for fear of economic or official retaliation, out of concern for social ostracism, or merely because of a desire to preserve as much of one’s privacy as possible. McIntyre, 514 U.S. at 341-42, 115 S.Ct. 1511, So too with the sender.or receiver of mail. Yet, because an alias was in this instance used to cloak the identities of the true parties to a narcotics transaction, our colleague concludes that the mailing should have no protection whatever, . .
There are two possible ways to interpret the concurrence. "First, because some people employ an alias and use the mail illegally, everyone with a legitimate reason to remain anonymous should lose their expectation of privacy in the post. Alternatively, only people using an alias for legitimate reasons may retain an expectation of privacy in their mailings while those who employ an alias for illicit purposes may not. Both constructions turn the Fourth Amendment on its head.
The first approach assumes that criminals can forfeit the privacy interests of all persons by using a confidential domain for nefarious ends. Any creative means that a person engaging in illegal activity devises to conceal that fact will lead to the end of privacy for persons engaged in wholly legitimate confidential activities. For example, .if persons engaged in illegal drug sales often use hotel rooms for their transactions, or commonly employ cellular telephones to .communicate the terms of their deals, then under the concurrence’s analysis no one would retain a legitimate expectation of privacy in the use of hotel rooms or cellular telephones.
Under the second approach, only criminals forfeit their Fourth Amendment rights. The illegal contents of the package.serve as an after-the-fact justification for a search. The concurrence concludes that society is not prepared to accept as reasonable an expectation of privacy in crack cocaine sent *1220 through the United States mail by a sender using a fictitious name for himself and his addressee. Of course, the government did not know the package contained crack cocaine until it opened and inspected the box, We may not justify the search after the fact, once we know illegal activity was afoot; the legitimate expectation of privacy does not depend on the nature of the defendant’s activities, whether innocent or criminal. United States v. Fields, 113 F.3d 313, 321 (2d Cir.1997), cert. denied, 522 U.S. 976, 118 S.Ct. 434, 139 L.Ed.2d 334 (1997). If this were the case, then the police could enter private homes without warrants, and if they find drugs, justify the search by citing the rule that society is not prepared to accept as reasonable an expectation of privacy in crack cocaine kept in private homes. Presumably if no narcotics are found (or, as the concurrence speculates, no pipe bombs are found), the owner of the home would be able to bring a civil lawsuit for nominal damages for the technical violation of privacy rights. The Fourth Amendment requires more than this.
Unlike the theoretical burglar in Rakas, who is plying his trade in a summer cabin during the off-season and who is wrongfully present on someone else’s property, Pitts and Alexander had a right to use false names in sending and receiving mail. See Rakas v. Illinois, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). There is nothing inherently wrong with a desire to remain anonymous when sending or receiving a package, and thus the expectation of privacy for a person using an alias in sending or receiving mail is one that society is prepared to recognize as reasonable.