

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00260-CR

ANGELA GOONAN																											APPELLANT

V.

THE STATE OF TEXAS																									STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

By information, the State charged Appellant Angela Goonan with possession of a dangerous drug. After a hearing on Goonan's motion to suppress evidence found in her car, Goonan entered a plea agreement whereby she was placed on deferred adjudication community supervision for one year. In three issues, Goonan complains that the trial court erred by denying her motion to suppress. We will affirm.

## II. BACKGROUND

In the late evening of August 31, 2008, Corporal Craig Berry of the Keller Police Department stopped Goonan for speeding. As Berry approached Goonan's car, he saw on the back floorboard a previously opened bottle of wine with its lid on. Berry asked Goonan for her license and insurance papers. Goonan provided her license but was unable to show proof of insurance. As Berry talked to Goonan, he further observed that the wine bottle was roughly five-eighths full. According to Berry, he took Goonan's license with him to his patrol car to run a computer check, which came back "clear." At some point during the encounter, Berry said that he observed Goonan "making some furtive movements . . . reaching over to her right side." After running the computer check, Berry returned to the passenger side of Goonan's car and talked with her. He discussed with Goonan that it was illegal to have an unsealed wine bottle in the passenger compartment of the vehicle and asked her "if there were any additional open containers in the vehicle." Berry said that Goonan denied there were any other open containers. He further said that she had a worried look on her face and told him that he "could look in the vehicle and that she had already unlocked it for [him]." Berry searched Goonan's vehicle.

By Berry's account, while searching the vehicle, he opened the center console and observed a pill bottle that contained the name of someone other than Goonan on the prescription label. He also said that the bottle label seemed odd because the prescription date was several years old—the fill date was April

2

2000—and the bottle label indicated that there were no authorized refills remaining on the prescription. Berry opened the pill bottle and observed that there were forty-eight pills within it—the prescription was written for sixty. Berry testified he believed that he was legally in Goonan's car because he had her consent and that he was legally allowed to seize the pill bottle because he had observed it while conducting the search.

Goonan testified that Berry had stopped her for speeding and that she did not provide proof of insurance. She explained that her movements toward the console were her efforts to look for her insurance papers while Berry was in his patrol car. She said that as she was digging through papers in her console, she saw the pill bottle for the first time. According to Goonan, the pill bottle was at the bottom of the console, under numerous papers, and she "didn't think anything of it." Goonan said that Berry accused her of attempting to hide the pill bottle under the other things in the console because the pill bottle was "buried at the bottom." The trial court denied Goonan's motion to suppress. This appeal followed.

## III. DISCUSSION

In three issues, Goonan complains that the trial court erred by denying her motion to suppress in violation of her federal and state constitutional rights and in violation of article 38.23 of the Texas Code of Criminal Procedure. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). Goonan does not contest whether Berry had her consent to search her

3

vehicle, nor does she complain that Berry seized the pill bottle. Goonan's complaint is that Berry was not justified in opening the pill bottle because it contained "innocuous materials." We disagree.

### 1. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those

4

questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave

5

the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### 2. Plain-View Doctrine

The plain-view doctrine involves no invasion of privacy. *See Texas v. Brown*, 460 U.S. 730, 738, 103 S. Ct. 1535, 1541 (1983); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). Thus, if an item is in plain view, neither its observation nor its seizure involves any invasion of privacy. *Walter*, 28 S.W.3d at 541. The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment. *See Illinois v. Andreas*, 463 U.S. 765, 771, 103 S. Ct. 3319, 3324 (1983). An object is seized in plain view if three requirements are met. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). First, law enforcement officials must lawfully be where the object can be "plainly viewed." *Id.* (citing *Horton v. California*, 496 U.S. 128, 136, 110 S. Ct. 2301, 2308 (1990)). Second, the "incriminating character" of the object in plain view must be "immediately apparent" to the officials. *Keehn*, 279 S.W.3d at 334. Third, the officials must have the right to access the object. *Id.* The second prong, the immediacy requirement, requires only a showing of probable cause that the item discovered is incriminating evidence; actual knowledge of the incriminating evidence is not required. *Joseph v. State*, 807

6

S.W.2d 303, 308 (Tex. Crim. App. 1991) (citing *Horton*, 496 U.S. at 136, 110 S. Ct. at 2308). "Probable cause merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief . . . that certain items may be contraband." *Miller v. State*, 686 S.W.2d 725, 728 (Tex. App.— San Antonio 1985, no pet.). An officer may rely on training and experience to draw inferences and make deductions as to the nature of the item seen. *Nichols v. State*, 886 S.W.2d 324, 325–26 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

In this case, Berry testified that he lawfully searched inside Goonan's console because she had consented to his search of her vehicle. Goonan does not contest this fact. Thus the first and third prongs of the plain-view doctrine are easily satisfied. Berry also said that the incriminating nature of the contents of the pill bottle was obvious to him because the label was made out to someone other than Goonan, the prescription was rather old and did not allow for refills, and he found the pill bottle in the car's console where Goonan had made furtive movements earlier. We conclude that the facts available to Berry would warrant a man of reasonable caution to believe that the pill bottle contained contraband and that his search of it was justified.

Goonan argues that the "general rule" is that "[i]ndividuals can manifest legitimate expectations of privacy by placing items in closed, opaque containers that conceal their contents from plain view." *United States v. Villarreal*, 963 F.2d 770, 773 (5th Cir. 1992). We agree that this is a well-founded general rule, but

7

the *Villarreal* court acknowledged that its reasoning did not apply in the context of an automobile when, as here, the officer possesses probable cause that such a container contains contraband. *See id.* at 774. Furthermore, the *Villarreal* court held that the container at issue in that case was not incriminating in nature; therefore, the plain-view doctrine did not apply. *Id*. at 776. But we hold that the container's incriminating nature in this case was readily apparent to Berry. Therefore, the trial court did not err by denying Goonan's motion to suppress. We overrule Goonan's three issues.

## IV. CONCLUSION

Having overruled all three of Goonan's issues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

DAUPHINOT, J. filed a concurring opinion.

PUBLISH

DELIVERED: January 20, 2011



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00260-CR

ANGELA GOONAN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

------------

## CONCURRING OPINION

------------

I write separately because I cannot tell from the well-written majority opinion what offense Appellant was found to have committed and what drug, dangerous drug, controlled substance, alcohol, or stolen property Appellant was found to have possessed. Or was she found to have violated the law by possessing a pill bottle with someone else's name on its label? If so, I cannot find that offense in our penal code. The record informs us that she was placed on deferred adjudication community supervision for possession of a "dangerous

drug."[1]   I join the majority because Appellant consented to the search and because she does not challenge the constitutionality of the statutes defining "dangerous drug" and making its possession illegal, statutes that make so little sense that it is difficult to understand how they provide any guidance to law enforcement, the bench, the bar, the pharmacist, or any person of normal perception.

From reading the record and the briefs, I deduce that the prohibited substance, the "dangerous drug," was naproxen.  Naproxen?  Really?  The original prescription was filled in April 2000 and was for sixty pills.  When the officer stopped Appellant in August 2008, forty-eight pills remained.  At that rate of consumption (assuming these pills were being consumed and assuming they were part of the original sixty), it would take another nineteen-plus years for the original prescription to be exhausted.

It should be noted that this "dangerous drug" can be purchased over the counter at local drugstores.  Naproxen is sold over the counter as Aleve and Midol Extended Relief.  Wikipedia informs us that "[t]he U.S. Food and Drug Administration (FDA) approved [the use of naproxen sodium] as an over-the-counter (OTC) drug in 1994, where OTC preparations are mainly marketed by

---

[1]Tex. Health & Safety Code Ann. §§ 483.001(2), .041 (Vernon 2010).

2

Bayer HealthCare under the trade name **Aleve** and generic store brand formulations."[2]

The record and the briefs inform us that this formulation that can readily be purchased over the counter is a dangerous drug. Why? Nothing in the record suggests that the contents of the bottle were tested and proved to be something other than naproxen. Nothing in the record suggests that the naproxen had been combined with another drug. It appears to be plain old naproxen. So why is it a crime for Appellant to possess it?

Section 483.001 of the health & safety code defines a dangerous drug:

"Dangerous drug" means a device or a drug that is unsafe for self-medication and that is not included in Schedules I through V or Penalty Groups 1 through 4 of Chapter 481 (Texas Controlled Substances Act). The term includes a device or a drug that bears or is required to bear the legend:

(A) "Caution: federal law prohibits dispensing without prescription" or "Rx only" or another legend that complies with federal law; or

(B) "Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian."[3]

This is the law, but what does it mean? Federal law requires a legend on cigarettes.[4] Does this mean that because cigarettes require "another legend that complies with federal law," a cigarette is a dangerous drug? A dangerous drug

---

[2]Wikipedia, The Free Encyclopedia, *Naproxen*, http://en.wikipedia.org/wiki/Naproxen (last visited Jan. 14, 2011).

[3]Tex. Health & Safety Code Ann. § 483.001(2).

[4]*See* 15 U.S.C. § 13.33 (2010).

must be a substance that is "unsafe for self-medication" but that is not otherwise against the law to possess.[5]  Naproxen is sold over the counter.  Is it unsafe for self-medication?  Who must testify that it is unsafe for self-medication?  Must a pharmacist or some other expert testify to this fact?  Apparently the naproxen found in Appellant's car was a dangerous drug because it was in a prescription bottle.  Would it still be a dangerous drug if it had been removed from the bottle?

I note that there is no exception in the possession statute (or, for that matter, the delivery statute[6]) for family members.[7]  That is, there is no exception that would allow a parent to pick up a prescription for a small child, or even an adult child, from the pharmacy.  There is no exception that would allow an adult child to pick up a prescription for an elderly parent.  Nor can wives or husbands pick up prescriptions for their spouses.  And apparently parents must leave the dangerous drug in possession of the child because the parent violates the law if the parent exercises care, custody, or control over the dangerous naproxen by putting it on a shelf only the parent can reach.  And what about Fido and Fluffy?  If the statute is to be complied with, they had better figure out how to pick up their own prescription from the vet and how to dose themselves because their owner cannot possess pet medication.

---

[5]Tex. Health & Safety Code Ann. § 483.001(2).

[6]*See id.* § 483.042.

[7]*See id.* § 483.041.

If we were not required to give words contained in statutes their plain meaning,[8] we could read some of these exceptions into the statute. But we are not allowed to create exceptions the legislature has not created.[9]

I write separately because the majority does not make plain the offense and circumstances of the offense that Appellant was accused of committing. The statutes defining "dangerous drug" and criminalizing the possession thereof do not make sense and raise too many questions about what kind of testimony, expert or otherwise, is required to prove a violation of the law. I also write to urge the legislature to reconsider these statutes that are so poorly written, to rethink the rationale behind making an OTC drug a dangerous drug with no more guidance than the statutes provide, and to place acquisition and storage of prescriptions in a real-world context.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: January 20, 2011

---

[8]*See Martinez v. State*, 323 S.W.3d 493, 503 & n.58 (Tex. Crim. App. 2010).

[9]*See Getts v. State*, 155 S.W.3d 153, 158 (Tex. Crim. App. 2005) (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 542, 124 S. Ct. 1023, 1034 (2004)).