

# Fourth Court of Appeals
## San Antonio, Texas

**DISSENTING OPINION**

No. 04-19-00704-CR

**EX PARTE** James Burke **JARREAU**

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 5552
Honorable Keith Williams, Judge Presiding

Opinion by:    Irene Rios, Justice
Dissenting Opinion by:  Liza A. Rodriguez, Justice

Sitting:       Luz Elena Chapa, Justice
               Irene Rios, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: December 23, 2020

I respectfully dissent because I believe the catch-all "unsafe for self-medication" portion of the definition of a "dangerous drug" in the Dangerous Drug Act is unconstitutionally vague on its face. TEX. HEALTH & SAFETY CODE ANN. §§ 483.001(2), 483.042(a). I would therefore reverse the trial court's order denying Jarreau's pre-trial application for habeas corpus relief and remand for dismissal of the indictment.

The provisions of the Dangerous Drug Act relevant to this appeal are section 483.042(a), which defines the offense of delivery of a dangerous drug, and section 483.001(2), which defines a "dangerous drug." *Id.* Section 483.042(a) provides that a person commits an offense if the person delivers or offers to deliver a dangerous drug unless: (1) the dangerous drug is delivered or offered for delivery by a pharmacist under a prescription and the container in which the drug is delivered has a label with the designated information; or (2) the dangerous drug is delivered or

offered for delivery by a practitioner, registered nurse, or physician assistant in the course of practice and the container in which the drug is delivered has a label with the designated information. *Id.* § 483.042(a). Section 483.001(2) defines a "dangerous drug" as "a device or a drug that is unsafe for self-medication and that is not included in Schedules I through V or Penalty Groups 1 through 4 of Chapter 481 (Texas Controlled Substances Act)." The definition goes on to state that the term "dangerous drug" "includes a device or a drug that bears or is required to bear the legend: (A) 'Caution: federal law prohibits dispensing without a prescription' or 'Rx only' or another legend that complies with federal law; or (B) 'Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian.'" *Id.* § 483.001(2). Jarreau contends the statute is facially unconstitutional because its definition of a "dangerous drug" is unduly vague in violation of the Due Process Clause. *See* U.S. CONST. amends. V, IV; *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.").

In a facial challenge, the court considers the statute "only as it is written, rather than how it operates in practice." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011). When resolving a facial challenge raised by a pretrial habeas application, we only consider the statutory language and the charging instrument; we do not consider the defendant's particular conduct.[1] *See Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001); *see also Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010). As discussed in the majority opinion, in order to prevail on his claim of facial unconstitutionality, Jarreau was not required to establish that the challenged portion of the statute always operates unconstitutionally in all circumstances. *See*

---

[1] In arguing that Jarreau had fair notice that his conduct violated the statute because the person to whom he delivered the drug died, the State overlooks the pretrial procedural posture in which the facial challenge is presented. *See Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (a pretrial habeas application is necessarily brought before any evidence has been developed through trial).

*Johnson v. United States*, 576 U.S. 591, 602 (2015) ("merely because there is some conduct that clearly falls within the provision's grasp" does not make a vague provision constitutional); *see also State v. Doyal*, 589 S.W.3d 136, 144 (Tex. Crim. App. 2019).

Specifically, Jarreau argues the portion of the statutory definition of a "dangerous drug" as one "unsafe for self-medication" violates due process because it is so vague that it: (1) fails to provide an ordinary person with reasonable notice of the prohibited conduct; and (2) fails to establish determinate guidelines for law enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983); *Johnson*, 576 U.S. at 595 (the government violates due process "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement"); *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also Wagner v. State*, 539 S.W.3d 298, 313 (Tex. Crim. App. 2018). A statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989). Rather, "the words or phrase must be read in the context in which they are used," and the statute is then construed according to the rules of grammar and common usage. *Id.* A statute satisfies vagueness requirements if the statutory language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Wagner*, 539 S.W.3d at 314 (quoting *Jordan v. De George*, 341 U.S. 223, 231–32 (1951)).

With respect to fair notice of the prohibited conduct, Jarreau asserts the "unsafe for self-medication" portion of the "dangerous drug" definition is so subjective that it does not provide an ordinary person with sufficient guidance or basis to understand in advance what type of device or drug will be considered "unsafe" for self-use. Jarreau argues the word "unsafe" is a fluid concept that can mean different things to different people and its use provides only minimal guidance as to the safety parameters for a "dangerous drug." The Merriam-Webster's Dictionary defines

"unsafe" as "able or likely to cause harm, damage, or loss." *See* www.merriam-webster.com/dictionary/unsafe. The concept that a particular substance is "unsafe" for self-medication, i.e., able or likely to cause harm, may differ based on multiple factors including the physical health of the person using the drug, the type of drug, the method of use, the number of times the drug is used, and various other factors. Jarreau also points out that the catch-all "unsafe for self-medication" part of the definition does not indicate what degree of harm is sufficient to be considered "unsafe" – is death required? Or serious bodily injury? Or is a headache or stomach upset sufficient? Further, as Jarreau asks, can over-the-counter non-legend drugs with potentially serious side effects, like Tylenol, be considered "unsafe" for self-medication within the meaning of the statute? The "unsafe for self-medication" definition also does not include any timeframe or time limitation for determining the safety of the drug. Must the harm be suffered immediately after use of the drug, or within hours, days, weeks, months, or years? Is a one-time use of the drug sufficient for it to be considered "unsafe" or must the usage be chronic to cause the harm? Does the harm, or "unsafe" nature of the drug, depend on other variables that are unknown to the person delivering the drug?

In my opinion, the phrase "unsafe for self-medication" is reasonably susceptible to different meanings to different people in different circumstances. Given the inherent vagueness of the word "unsafe," I would conclude the catch-all "unsafe for self-medication" portion of the definition of a dangerous drug lacks a clear standard and does not reasonably inform an ordinary person of what type of drug falls within that catch-all part of the definition.[2] An ordinary person

---

[2] This opinion does not address, and has no effect on, the portion of the definition stating that a legend drug is "included" as a dangerous drug. TEX. HEALTH & SAFETY CODE ANN. § 483.001(2); *see Ex parte Ellis*, 309 S.W.3d at 81 (stating a facial challenge based on vagueness could be made to the definition of "funds" in the money laundering statute "insofar as it extends outside the statutory list" because use of the term "includes" operates as an "'enlargement and not [a] limitation,' [and] essentially creates an implied 'catch-all' provision.").

untrained in medicine or pharmacology cannot know with any degree of accuracy in advance what substances are "unsafe" for self-medication and thus cannot know what conduct is prohibited by the criminal statute. *See Goonan v. State*, 334 S.W.3d 357, 363 (Tex. App.—Fort Worth 2011, no pet.) (Dauphinot, J., concurring) (observing that "[t]he statutes defining 'dangerous drug' . . . do not make sense and raise too many questions about what kind of testimony, expert or otherwise, is required to prove a violation of the law," and asking whether an over the counter non-legend drug such as naproxen, sold as Aleve, is "unsafe" for self-medication). Here, as in *Cotton v. State*, "[t]he perimeters of its prohibition are imprecise." *See Cotton v. State*, 686 S.W.2d 140, 142-43 (Tex. Crim. App. 1985) (holding TABC provision making it illegal to sell beer to persons "showing evidence of intoxication" was unconstitutionally vague because symptoms like slurred speech and bloodshot eyes may appear in intoxicated as well as non-intoxicated persons); *see also May v. State*, 765 S.W.2d 438, 439-40 (Tex. Crim. App. 1989) (holding former harassment statute unconstitutionally "vague and indefinite because there is no objective standard to measure the level of annoyance or alarm prohibited" and "failure to specify whose sensitivities are relevant"). "What renders a statute vague is the 'indeterminacy of precisely what' the prohibited conduct is." *Doyal*, 589 S.W.3d at 146 (quoting *United States v. Williams*, 553 U.S. at 306). As noted in *Doyal*, "[s]tatutes have been struck down as vague when they tied the defendant's criminal culpability to conduct that was . . . [defined by] terms [that] encompassed 'wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.'" *Id.* (internal citations omitted). Here, the phrase "unsafe for self-medication" lacks any limiting language to clarify its scope and operates as an indeterminate and abstract concept that fails to provide adequate notice of the prohibited conduct. *See Williams*, 553 U.S. at 304; *see also Doyal*, 589 S.W.3d at 146.

With respect to the lack of guidelines for enforcement of the statute, Jarreau characterizes the "unsafe for self-medication" definition as employing an arbitrary "fill in the blank" standard

that relies on the law enforcement officer's subjective determination of what does and what does not constitute a dangerous drug. *See Howard v. State*, 617 S.W.2d 191, 192 (Tex. Crim. App. 1979) ("The result is that the ordinance … affirmatively assigns to the arresting officer the legislative responsibility to give content and meaning to the ordinance by defining one of its elements with the "fill in the blank" standard that makes the scope of offending conduct a product of the officer's subjective determination . . . ."). I agree. Given the indeterminate and subjective nature of what drug or device is "unsafe" for self-medication, as discussed above, the phrase also fails to provide guidelines to prevent arbitrary and discriminatory enforcement and indeed may operate to encourage it. *See Williams*, 553 U.S. at 304 (statute that is "so standardless that it authorizes or encourages seriously discriminatory enforcement" is unduly vague and facially unconstitutional); *see also Doyal*, 589 S.W.3d at 146.

I would hold that Jarreau met his burden to establish that the catch-all "unsafe for self-medication" portion of the definition of a dangerous drug is so vague and indeterminate that it does not provide reasonable notice to an ordinary person of the prohibited conduct and fails to establish determinate guidelines to prevent arbitrary and discriminatory enforcement. *See Kolender*, 461 U.S. at 357-58; *see also Wagner*, 539 S.W.3d at 313; *Doyal*, 589 S.W.3d at 146. Here, as in *Johnson*, it is "the indeterminacy of the wide-ranging inquiry" required by the definition that deprives citizens of fair notice and invites arbitrary enforcement. *Johnson*, 576 U.S. at 597. When a statute is facially unconstitutional, "there is no valid statute and the charging instrument is void" and must be dismissed. *Ex parte Weise*, 55 S.W.3d at 620 (internal citations omitted). Therefore, I would reverse the trial court's order denying Jarreau's request for habeas corpus relief and remand the cause to the trial court for dismissal of the indictment as void.

Liza A. Rodriguez, Justice

PUBLISH