

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-19-00263-CR

**THE STATE OF TEXAS,**

           **Appellant**

**v.**

**TAYLOR ANN RADKE,**

           **Appellee**

_____

**From the County Court
Limestone County, Texas
Trial Court No. 39104**

## AND

## No. 10-19-00265-CR

**THE STATE OF TEXAS,**

           **Appellant**

**v.**

**JONATHAN ADAM RIVERA,**

           **Appellee**

_____

**From the County Court
Limestone County, Texas
Trial Court No. 39084**

# MEMORANDUM OPINION

The State appeals the trial court's orders granting the motions to suppress filed by Appellees Taylor Ann Radke and Jonathan Adam Rivera.[1] We will reverse.

## Factual and Procedural Background

Law enforcement officers executed a search warrant at the residence of Radke and Rivera looking for a pair of cut and/or damaged Smith & Wesson handcuffs and a set of bolt cutters. Officers were searching for evidence that Rivera had assisted an inmate who had escaped from the Limestone County jail. While executing the warrant, an officer discovered a prescription pill bottle on a dresser in the bedroom occupied by Radke and Rivera. Half of the label on the bottle was scratched off, obliterating the name of the prescription holder and part of the name of the medication. The officer could see what he believed were hydrocodone pills inside the bottle and opened the pill bottle to confirm his suspicion. Subsequent investigation confirmed that the pills were hydrocodone, a level three narcotic requiring a prescription.

Officers executing the warrant seized additional drugs and drug paraphernalia from other areas of the house. Officers discussed whether they would need a separate search warrant for the drugs but were told by the district attorney that another warrant was unnecessary. In addition to the drugs, the search uncovered a set of bolt cutters that appeared to have been recently used. No handcuffs or pieces of handcuffs were found.

---

[1] Although Radke and Rivera were charged separately, one suppression hearing was held for both.

Officers had executed a search warrant for narcotics at the residence a month earlier. Radke and Rivera were living in the residence when the earlier search warrant was executed.

An officer questioned Radke and Rivera, who both admitted knowing the hydrocodone was in the bedroom but denied ownership. Both Radke and Rivera were charged by information with possession of less than twenty-eight grams of hydrocodone.

Radke filed both a motion to suppress physical evidence and a motion to suppress statements. Rivera filed a motion to suppress all tangible evidence seized by law enforcement.[2] The trial court granted the motions and subsequently made the following findings of fact and conclusions of law:

> That Groesbeck Police Department contacted the DA and asked for another search warrant to include illegal drugs. The DA told them **they did not need** another search warrant. That based on my interpretation of the plain view law I did not believe a pill bottle in and of itself was illegal. Since it is not practical for either handcuffs or bolt cutters would be in the pill bottle I, therefore, determined the Officer exceeded the scope of the warrant.

(Emphasis in original.)

The trial court made no specific findings of fact or conclusions of law regarding the statements made by Radke and Rivera, and the State did not request that the trial court make additional findings of fact and conclusions of law.

After the suppression hearing, the trial court made the following statements:

---

[2] While Rivera's motion to suppress did not specifically request suppression of any statements he made to law enforcement, the issue regarding Rivera's statements was raised at the suppression hearing.

I will -- I think first and foremost, let me just say this: I was not convinced that they had their rights read to them; I just was not convinced of that. So I'm going to grant that motion to suppress those statements. I think we all believe that in -- in -- when this is -- when something like this is happening, you want to make sure that -- from what I know, that's something that's very important that they do. So I'm going to go ahead and grant that.

Now, let me just say this on the other: And I did quite a bit of homework on this because as y'all know my background, I needed to bone up on this a little bit. I originally was upset because of the fact that, sure, they weren't just going to walk in there and start looking for -- in a pill box to find bolt cutters or leg shackles or handcuffs, you know, I realize that. And then I learned about plain view and -- but on this case right here, he's having to take his previous experience to look for something he wasn't looking for, and to just assume that just because that was scratched off that then he shifted gears out of looking for what he was looking for into trying to look for narcotics.

He testified that he did not know that there were any there, but had previous, but that's not what they were going in there for. In looking at this and hearing what I heard today, it sure would have been nice if they would have King-X'd it and said, "Look, let's go back and get a separate search warrant," in my opinion, because I think that would have made this a lot more simpler. We wouldn't -- probably wouldn't even be here today, frankly.

So I'm having to make a decision whether or not the pill bottle, it being in plain view and him going over to look in it is justified, and I just can't do that.

So I'm going to grant your Motion to Suppress, and we will go from there.

**Standard of Review**

We review a trial court's ruling on a motion to suppress evidence or statements for an abuse of discretion and overturn the ruling only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021); *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). We conduct a bifurcated standard of review, giving almost total deference to a trial court's

findings of historical fact and reviewing the application of the law to those facts *de novo*. *Wexler*, 625 S.W.3d at 167; *Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016).

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court does not enter findings of fact, "we review the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Wexler*, 625 S.W.3d at 167; *see also Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). "The party that prevailed in the trial court is afforded the strongest legitimate view of the evidence, and all reasonable inferences that may be drawn from that evidence." *Wexler*, 625 S.W.3d at 167. We will sustain a judge's ruling "if the record reasonably supports that ruling and is correct on any theory of law applicable to the case." *Cole*, 490 S.W.3d at 922; *see also State v. Lujan*, 634 S.W.3d 862, 866 (Tex. Crim. App. 2021) ("[T]he trial court's ruling must be upheld on any applicable legal theory.").

The trial judge "'is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony' when entertaining a motion to suppress." *Wiede*, 214 S.W.3d at 24–25 (quoting *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)); *Richardson v. State*, 494 S.W.3d 302, 304 (Tex. App.—Waco 2015, no pet.). The trial court is entitled to believe or disbelieve all or part of a witness's testimony—even if that testimony is uncontroverted—because he is in the best position

to observe the witness's demeanor and appearance. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

## Issue Two[3]

The State argues that the trial court erred in granting the motions to suppress evidence because the pill bottle was in plain view.

AUTHORITY

The "plain view" doctrine permits a law enforcement officer to seize contraband that is in plain sight or open view without the necessity of first obtaining a warrant. *State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013); *see also Kentucky v. King*, 563 U.S. 452, 463, 131 S.Ct. 1849, 1858, 179 L.Ed.2d 865 (2011). "For a plain-view seizure to be lawful, the officer must have had lawful authority to be in the location from which he viewed the item, and the incriminating nature of the item must be immediately apparent." *State v. Rodriguez*, 521 S.W.3d 1, 18 (Tex. Crim. App. 2017). "Immediately apparent" simply means that "the viewing officers must have probable cause to believe an item in plain view is contraband before seizing it." *State v. Dobbs*, 323 S.W.3d 184, 189 (Tex. Crim. App. 2010). Actual knowledge of the incriminating evidence is not required, but the officer must have probable cause to connect the item with criminal activity. *Goonan v. State*, 334 S.W.3d 357, 361 (Tex. App.—Fort Worth 2011, no pet.); *see also Young v. State*, 563 S.W.3d 325, 330 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

Probable cause exists where the facts and circumstances known to law enforcement officers are "sufficient in themselves to warrant a man of reasonable

---

[3] Because we find Issue Two dispositive, we will not address Issue One.

caution in the belief that an offense has been or is being committed." *Marcopoulos v. State*, 538 S.W.3d 596, 602 (Tex. Crim. App. 2017) (citation omitted). To determine whether an officer had probable cause, we consider the totality of the circumstances. *Wiede*, 214 S.W.3d at 25. Probable cause is viewed objectively. *Id*. at 27. In making a probable cause determination, "[a]n officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person." *Goonan*, 334 S.W.3d at 361; *see also Wiede*, 214 S.W.3d at 25 ("[T]he training, knowledge, and experience of law enforcement officials is taken into consideration.").

While a pill bottle in and of itself is not an object that is immediately identifiable as contraband, it can become inherently suspicious under certain circumstances. *See Goonan*, 334 S.W.3d at 361. "An officer may rely on training and experience to draw inferences and make deductions as to the nature of the item seen." *Id*.

DISCUSSION

There is no question that the officers executing the search warrant in the present case were legally present when the pill bottle was observed. The issue is whether the incriminating character of the pill bottle was immediately apparent to the officer who seized it.

Officer Matthew Kirk discovered the pill bottle in the bedroom shared by Radke and Rivera. Kirk did not know who occupied the bedroom when he found the pills. The scratched off label indicated to him that the pills were possessed by someone who did not have a prescription, a circumstance he had seen many times in his training and experience. Kirk testified that a "prudent individual wouldn't take the label off their

pill bottle if they were legally prescribed the medication." Kirk could see that the bottle contained pills that resembled hydrocodone. When Kirk picked up the pill bottle, he could see that the imprint on the pills, in his training and experience, designated the pills as hydrocodone. Kirk then opened the bottle and verified that the imprint he observed was associated with hydrocodone. Kirk knew that hydrocodone is in a penalty group requiring a prescription. Kirk gave the pills to Officer Blanco who separately verified that the pills were in fact hydrocodone.

In this case, the trial court did not consider the totality of the circumstances or the training and experience of Officer Kirk when concluding that the search of the pill bottle did not fall within the parameters of the plain view doctrine. We sustain the State's second issue.

**Issue Three**

In its third issue, the State argues that the trial court erred in granting Radke's and Rivera's motions to suppress statements because they were not subjected to a custodial interrogation.

AUTHORITY

The Fifth Amendment protects a criminal defendant from being forced to bear witness against himself. U.S. Const. amend V. The *Miranda* rule was intended to protect a defendant against the coercive nature of police questioning and ensure that his Fifth Amendment right is safeguarded. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981); *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* and Article 38.22 deem a defendant's statement

inadmissible unless the accused is first warned that he has the right to remain silent, his statement may be used against him, and he has the right to hire a lawyer or have a lawyer appointed. *Miranda*, 384 U.S. at 479, 86 S.Ct. 1602; TEX. CODE CRIM. P. ANN. art. 38.22. However, *Miranda* and Article 38.22 are applicable only when a defendant has been subjected to *custodial* interrogation.

In determining whether the accused is in custody, the trial court must evaluate: (1) the circumstances surrounding the interrogation; and (2) whether a reasonable person in those circumstances would have felt he was not free to leave. *Wexler*, 625 S.W.3d at 167; *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). In deciding whether an individual was in custody, the appellate court takes the findings that are supported by the record and determines whether they constitute a *Miranda* custody situation as a matter of law. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). "Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test" to determine whether there was restraint on freedom of movement of a degree associated with arrest. *Wexler*, 625 S.W.3d at 167 (quoting *Thompson*, 516 U.S. at 112, 116 S.Ct. 457). The ultimate inquiry is whether, under the circumstances, a reasonable person would have believed that his freedom of movement was restricted to the degree associated with a formal arrest. *Id.* (citing *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *see also Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).

In *Dowthitt*, the Court of Criminal Appeals identified four situations that may constitute custody: (1) when the suspect is physically deprived of his freedom of action

in any significant way; (2) when a law-enforcement officer tells the suspect that he cannot leave; (3) when law-enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law-enforcement officers do not tell the suspect that he is free to leave. *Id.*, at 255. Regarding the first through third situations, the restriction on the suspect's freedom of movement must be to the degree associated with an arrest as opposed to an investigative detention. *Id.*

When a search warrant is executed at a residence, a person who is an occupant of the premises may be detained for the duration of the search. *Michigan v. Summers*, 452 U.S. 692, 703-4, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *see also Babalola v. State*, No. 10-09-00234-CR, 2011 WL 1419752, at *4 (Tex. App.—Waco Apr. 13, 2011, pet. ref'd) (mem. op., not designated for publication).

DISCUSSION

Officer Blanco could not remember whether he advised Radke and Rivera of their *Miranda* rights. As we imply all facts necessary to support the trial court's ruling, and there being no facts to the contrary, we conclude that Radke and Rivera were not informed of their *Miranda* rights before being questioned about the presence of the hydrocodone pills in the bedroom. The issue is whether, despite the lack of *Miranda* warnings, a reasonable person in the situation faced by Radke and Rivera would have felt that there was a restraint on his or her freedom to a degree associated with being under arrest rather than detained.

Based upon a totality of the circumstances, we cannot agree that Radke and Rivera were subjected to a restriction on their movements to the degree associated with an arrest. The record reflects that Radke and Rivera were merely detained while law enforcement officers executed the search warrant on their residence. Neither Radke nor Rivera was handcuffed, and neither was told they were not free to leave. As such, the questions asked by law enforcement did not constitute a custodial interrogation, and *Miranda* warnings were not required. We sustain the State's third issue.

## Conclusion

Having sustained the State's second and third issues, we reverse the trial court's orders granting appellants' motions to suppress. We remand this case to the trial court for further proceedings.


MATT JOHNSON
Justice


Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
(Chief Justice Gray dissenting)
Reversed and remanded
Opinion delivered and filed April 13, 2022
Do not publish
[CR25]

